# WATTERSON *v.* NASHVILLE.

## (*Nashville.* February 2, 1901.)

1. MUNICIPAL CORPORATIONS. *Not liable on implied contract, when.*

Where the charter of a municipal corporation provides that alterations and modifications in the original plans and specifications of public works or buildings shall not be made in the course of their erection, except upon order of its Board of Public Works, and that such order shall be of no effect until the price to be paid for the changes and modifications shall have been agreed upon, in writing, signed by the contractor and approved by the Board, the cost of the whole, including the extra work, in no case to exceed the original estimate, the city cannot, under such charter, be held by the contractor as upon an implied promise, even when the building or work has been completed and accepted, for the cost of changes or modifications made in the plans and specifications thereof in disregard of said requirements. (*Post, pp. 411–414.*)

2. SAME. *Same. Declaration.*

And a declaration, in an action by the contractor, seeking to recover from the city the cost of such changes and modifications, is fatally defective and bad on demurrer, which fails to aver affirmatively that same were made in conformity to the said charter requirements. (*Post, pp. 411–414.*)

3. CONTRACTS. *Illegal, when.*

Express contracts made in violation of the prohibition of statute ordinance are void. *A fortiori* an obligation will not be implied from a transaction done in violation of the prohibition of statute or ordinance. (*Post, pp. 414, 415.*)

Cases cited: Stephenson *v.* Ewing, 87 Tenn., 46; Cary Lombard Lumber Co. *v.* Thomas, 92 Tenn., 589.

4. SAME. *Same. Ratification.*

And such contract for changes and modifications in the plans and specifications of public works or buildings, in violation

Watterson v. Nashville.

of, the prohibitions of an ordinance, are not susceptible of rati-
fication by the corporation. (*Post, pp. 416–424.*)

Cases cited: Memphis v. Gas Co., 9 Heis., 531; Land Co. v. Jellico,
103 Tenn., 320; Gaslight Co. v. Memphis, 93 Tenn., 612.

---

## FROM DAVIDSON.

---

Appeal in error from Circuit Court of David-
son County. J. W. BONNER, J.

BARTHELL & KEEBLE for Watterson.

PRICE & McCONNICO for Nashville.

BEARD, J. This case is one of implied assump-
sit, coming by appeal in the nature of a writ
of error, from the judgment of the Circuit Court
sustaining a demurrer to plaintiff's declaration.
The averments of the declaration, in substance,
are that plaintiff in error had made a written
contract with the defendant, through the Board of
Public Works and Affairs, its duly authorized agent,
to do the carpenter work on the new City Hall,
and that while doing this work according to plans
and specifications, made a part of his contract, he
was ordered to make certain changes and modifi-
cations not included in the original plans and
contract, which involved the use of more costly
material and much increased expense to plaintiff
in error; that on receiving this order he gave

written notice to the Board of Public Works and
Affairs that he would demand extra compensation
for this extra work, and that thereupon he pro-
ceeded to do the work, upon the assurance of
the Board, through its president, that it would be
paid for "when the contract was completed." It
is also averred that though ordering these changes
and modifications, and upon the completion of the
work, accepting and still retaining the benefits of
it, the defendant declined to pay · therefor, to the
damage of plaintiff twenty-five hundred dollars.

The ground of the demurrer held fatal to the
declaration was that it failed to aver a compli-
ance with certain statutory or charter requirements
essential to a valid contract ·for extra work, lack-
ing which, it was insisted that in the face of the
prohibitions of the statute or charter, this action
of implied assumpsit could not be maintained.

The charter provisions relied upon by the de-
murrant, and which by the trial Judge were held
sufficient to defeat plaintiff's action, are as ·fol-
lows:

."Section 43. When, in the opinion of the Board
it shall become necessary in the prosecution of
any work to make alterations or modifications in
the specifications or plans of a contract, such al-
terations or modification shall only be made by
order of the Board, and such order shall be of
no effect until the price to be paid for the same
shall have been agreed upon in writing and.

signed by the contractor and approved by the Board. The total cost of the work, with the addition of the price agreed upon, shall not exceed the original estimate.

"Sec. 44. No contractor shall be allowed anything for extra work caused by an alteration or modification, unless an order is made or an agreement signed, as provided in the preceding section, nor shall he in any case be allowed more for such alteration than the price fixed by the agreement."

It will be seen that the constituent elements alleged by the demurrer to be vital to a contract for alterations and modifications. in some work in progress, and which the declaration in the case fails to · aver existed in plaintiff's contract, are that the price to be paid for such extra work must be agreed upon in writing and signed by the contractor and approved by the Board, and that the total cost of the work, including that of the extra work, shall not exceed the original estimate. Wanting these elements it is insisted by the demurrant that the contract is void, and the city is expressly prohibited from allowing the contractor anything for the extra work done under it.

We think there can be no doubt that these statutory elements are essential to the making of a lawful contract for extra work, and that lacking in them, the contract is void; and that in

the face of the inhibitory terms of the charter provisions no action can be maintained in any form to recover from the city the value of such work.

We have had occasion several times to consider questions cognate to the one involved in this case, and it has been distinctly held that contracts made in violation of a prohibitory statute cannot be enforced. Among the cases so holding are *Stephenson* v. *Ewing,* 87 Tenn., 46, and *Cary-Lombard Lumber Co.* v. *Thomas,* 92 Tenn., 589. The first of these was an action brought by an unlicensed real estate broker to recover commissions for negotiating a sale of real estate. The statute then in force declared the occupation of a real estate broker to be a taxable privilege, and provided that it should "not be pursued without license." The statute was successfully interposed as a defense. This Court said: "Here is an express prohibition of all unlicensed persons to act as real estate brokers, and consequently, a prohibition by necessary inference of all contracts which such persons shall make for compensation to themselves for so acting. It is familiar law, both in England and America, that a contract prohibited, either expressly or impliedly, by statute is illegal, and cannot be enforced.". To this proposition many authorities are cited.

The case of *Cary-Lombard Lumber Co.* v. *Thomas, supra,* was that of a foreign corporation deal-

ing through an agent located in Memphis and supplying lumber for the construction of a house in that city, seeking relief to the extent of the value of the material so furnished. This corporation had failed to comply with the requirements of Ch. 122 of the Acts of 1891, until after a considerable part of this lumber had been supplied. As to that portion of the account which accrued after the Act took effect and prior to the registration of its charter, the Court said: "All contracts made and all business transacted by it in Shelby County between these dates were illegal, and no rights of property or of action could · arise out of the same. It follows that such· company can have no remedy growing out of any transaction between these dates in Shelby County, and can recover upon no contract, express or implied, entered into between these dates, and is not entitled to retake or recover any material or lumber furnished within these dates."

This last case would seem to be as conclusive against the right to recover on an implied assumpsit resting upon the acceptance and appropriation of the fruits of a prohibited contract, as upon the express contract under which these fruits or benefits were conferred, because the case showed that at the time this Court was repelling the complainant corporation, the defendants, Thomas and wife, were in the enjoyment of the property, into which its material · had been worked.

But it is said we are precluded from applying this principle to the present case, because of utterances made and conclusions announced in other and later cases determined by the Court. We will briefly examine these cases.

In *Gaslight Co.* v. *Memphis,* 93 Tenn., 612, the claim was for a balance due complainant on an account for illuminating gas furnished the city for the years from 1879 to 1884, inclusive. There were written contracts covering the years 1879 and 1880 and 1881; if there were contracts in writing for the years 1882, 1883 and 1884 they were not found, yet it did appear that the gas was furnished for these years according to bids and upon the same terms as in the former years. By the terms of the written contracts the city was to pay the company for the gas consumed from a fund to be derived from a tax levy of ten cents on each one hundred dollars worth of property within the city, and the gas company was to look alone to this fund for compensation. This tax levy was made each of the several years, realizing an amount sufficient to discharge the claim of the company. The fund being otherwise appropriated, suit was brought on balance claimed to be due. The city ineffectually interposed the statute of limitations against so much of this claim as was more than six years old, the Court holding that the fund so collected was impressed with an express trust against which the statute did not

.run. In addition the city insisted that, in no event could the company recover for the gas consumed in these years for which no written contracts were produced. This defense was made in regard to a clause of its charter which provided that all its contracts should be in writing and signed by the commissioners consenting thereto and recorded in a well bound book open at all times for public inspection. This defense was also overruled, and it was held that having used the gas the city was liable upon a *quantum meruit.*

We adhere to the principle upon which this holding was made, but we are unable to discover in it any support for the contention of the plaintiff in error in the present case. To contract for gas was within the scope of the power of the city, and the charter provided certain formalities in the making of that contract, which it was the duty of its agents to observe. While this duty was imposed, "the statute does not necessarily imply that a failure in conformity would vitiate the contract, and especially does it lack all intimation that such nonconformity on the part of these agents should deprive the contractor of all right of recovery for his work, time or material furnished under such contract and afterwards accepted by the city. In such case nonobservance of the statutory requirements might well be taken as a mere irregularity, so that when the city levied

22 P—27

and collected taxes to discharge the contract, and also accepted the benefits of it, the other party to the contract might well invoke the general law, which imposes the obligation "to do justice," and "which binds all persons, whether natural or artificial."

*Land Co.* v. *Jellico,* 103 Tenn., 320, was a suit to recover for moneys expended in improving a street in the town of Jellico, under a contract authorized at a special meeting of a municipal board, and the defense was that this meeting was held in the absence of one or two of its number, occasioned by the lack of notice to them that it would be held. The Court recognized the general rule that notice to each member of such meeting was essential to the validity of an act done at it, yet, inasmuch as the town had the right to improve its streets, and also to make a contract for its improvement, and was enjoying the benefits of the work done under this contract, it was held liable upon the ground of an implied contract.

Thus it will be seen that these cases, while applying the rule of an implied promise from advantages received, and thus giving relief when the innocent party could not have obtained it upon the express contract invalid for irregularity, give no color to the contention that this rule can be availed of in a contract expressly prohibited by the statute.

But it is insisted that this contention is sustained by the great weight of authority outside of this State. The most of the cases cited by the counsel are to the proposition that where a municipal contract has been made, lacking in some technical or formal regularity not jurisdictional in character, under which the other party has in good faith done work or furnished material, the benefit of which has been appropriated by the municipality, justice will be done by raising an implied assumpsit in favor of the party doing the work or furnishing the material. Four cases are pressed upon us, as holding that such relief may be given even when the contract is prohibited by statute. We will now briefly consider these cases.

In *Argenti* v. *City of San Francisco,* 16 Cal., 258, a recovery was sought for work done on certain streets of San Francisco. The opinion of the Court was delivered by Cope, J., and concurred in by Fields, J., the third member of the Court, Baldwin, J., apparently not participating in the disposition of the case. One of the defenses was that the city charter forbade the creation of any indebtedness which, with all former debts, should exceed in the aggregate the sum of $50,000 over and above the annual revenue of the city, and that in violation of this charter provision the contract under which the work was done was made. The Court held the

provision to be directory, because of the indefiniteness of the standard furnished by the statute, but further, if in error in this, then that the city having received the work contracted for, would not be permitted to enjoy it without paying for it, citing many authorities in support of this last proposition. In answer to a petition to rehear the cause, Field, J., delivered an opinion in which, after adhering to the judgment reached by the Court theretofore, withdrew his assent to the doctrine of an assumpsit implied from mere use and placed his adherence upon the ground that the contracts made were valid and enforceable. Judge Fields said: "I place my concurrence in the judgment heretofore rendered . . . upon the validity of the contracts with the city. . . . I have been thus explicit because I do not consider that, independent of such contracts, any liability would attach to the city for the improvement of the streets. A municipal corporation can only act in the case and in the mode provided by its charter, and for street improvements of a local nature, express contracts, authorized by ordinance, are necessary to create a liability. The doctrine of liability as upon implied contracts has no application to cases of this character."

*Nelson* v. *Mayor,* 63 N. Y., 535, was an action brought to recover a large balance due on a contract to furnish "sewer drain pipes," etc.

A motion for a nonsuit was entertained upon two grounds—one being that the plaintiff had failed to show that an appropriation had been previously made, covering the expenses contemplated by the contract. By the charter of New York it was provided "that no expense should be incurred by any of the departments . . . unless an appropriation should have been made covering such expense." In meeting a particular argument of the plaintiff below resting upon another clause in the statute bearing on the subject of controversy, the Court said: "The difficulty in the way of this argument is, that if when the contract was made there was no previous appropriation covering the expense, it fell within the prohibition and was illegal and void. . . . . It does not follow, however, that though the contract be void the plaintiff would be entirely without remedy. If, as is alleged, the city has obtained his property without authority, but . . . received the avails of it, it would seem that, independently of the express contract, an implied obligation would arise to make compensation." This, however, was obiter, for the case was at last rested by the Court upon a later Act, the necessary effect of which, it was held, was to legitimate this contract. The Court said: "The city admits that it has received and used the material furnished by him (the plaintiff). The Legislature has provided the means of payment, and by so

doing has taken the case out of the general pro-
vision requiring a previous appropriation, and un-
less some substantial defense can be shown to the
claim, we see no reason why it should not be
paid, in accordance with the intention of the
Legislature." So on this ground alone was the
case reversed and sent back for a new trial.

The case of *Silsby Mfg. Co.* v. *Allentown,* 153
Penn. State, 320, announced the proposition, about
which there can be no controversy, that councils
of a municipality may adopt an act done for
the benefit of the city by one of the municipal
officers and assume the debt so contracted when
the only objection to it was the officer was with-
out authority at the time of entering into the
contract.

These cases, when analyzed, we think, fail as
authority for the contention of plaintiff in error.
But it may, and possibly must, be conceded that
the case of *City of Cincinnati* v. *Cameron,* 33 Ohio
St., 336, does support it. The opinion of the Court
delivered in that case indicates much research
and presents the issue insisted on here, with much
ability. But as against it are the holdings of
many courts of the highest respectability. In *Mur-
phy* v. *Louisville,* 9 Bush, 191, the Court said:
"If the alleged contract is made otherwise than
as required by ordinance, it is not binding, and
if not obligatory as a contract, the law creates
no implied promise to pay." In *McDonald* v.

*New York,* 68 N. Y., 25, the Court, speaking through Folger, J., said: "How can it be said that a municipality is liable upon an implied provision when the very statute which contains its corporate life and gives it its powers prescribes the mode of exercising them, and says that it shall not and hence cannot become liable save by express promise. Can a promise be implied which the statute of frauds says must be in writing to be valid? How do the cases differ?"

And in *Zottman* v. *San Francisco,* 20 Cal., 96, the Court, repudiating the doctrine of liability by implication, announced by Cope, J., in *Argenti* v. *San Francisco, supra,* said, through Field, J.: "The law never implies an agreement against its own restrictions and prohibitions," or as it is expressed in the New York case (*Brady* v. *The Mayor and City,* 16 Hun Pr., 432): "The law never implies an obligation to do that which it forbids the party to agree to do." See, also, *Stewart* v. *Cambridge,* 125 Mass., 102; *Boston Electric Co.* v. *City of Cambridge,* 163 Mass., 64; *Dickinson* v. *City of Poughkeepsie,* 75 N. Y., 65; *McBrian* v. *City of Grand Rapids,* 56 Mich., 95; *Schum* v. *Seymour,* 24 N. J. Eq.; *Addis* v. *City of Pittsburg,* 85 Penn. St., 379; Beach on Pub. Corporations, 252; 1 Dillon on Municipal Corp., Sec. 461; Tiedeman on Municipal Corp., Sec. 164.

We are satisfied the rule thus announced is

sound; that statutory requirements such as are found in the charter provisions in question are jurisdictional in character, a compliance with which is essential to the integrity of a contract for extra work, and that a contract made in disregard of them is void beyond the power of subsequent ratification. To use the language of Chief Justice Nicholson in the *City of Memphis* v. *Memphis Guyoso Gas Co.,* 9 Heis., 531, "it may be laid down that when a corporation or an agent thereof does an act or makes a promise that is forbidden by its charter or is not authorized thereby, either expressly or by fair implication, the act or promise is a nullity and cannot be binding by a subsequent ratification."

The application of this rule will work hardship in particular cases, but this is better than that wise safeguards contrived by the Legislature to protect the public against improvidence and fraud should be broken down by the Courts. It is not requiring too much that parties dealing with municipal agents should inform themselves of the extent of their authority, as well as of the essentials of a valid contract. In other cases *ignorantia juris neminem excusat,* and there is no reason why it should be otherwise when a party enters into dealings with a public corporation.

The judgment of the lower Court is affirmed.