JOHNSON CITY *v.* CARNEGIE REALTY CO. *et al.*

(*Knoxville,* September Term, 1933.)

Opinion filed Nov. 18. 1933.

656

GEORGE N. BARNES and JACK CHALKLEY, for Johnson City.

WILLIAMS, MILLER & WINSTON, MILLER, MILLER & MARTIN and GLENN M. ELLIOTT, for defendent, Carnegie Realty Co. *et al.*

MR. JUSTICE SWIGGART delivered the opinion of the Court.

This is an original bill by the city of Johnson City against owners of property abutting Oakland street, to

enforce special assessments levied to pay the cost of paving the street. The chancellor's decree sustaining the bill was affirmed by the Court of Appeals, and the case is before us by *certiorari*, granted on the petition of the defendants.

The assessments sought to be enforced were levied by authority of Acts 1907, chapter 276, a special act limited in its application to Johnson City. This act authorizes the creation of "improvement districts," in which pavements, sidewalks, and sewers may be constructed at the joint expense of abutting property and the city. Section 12 directs the legislative body of the city to cause to be prepared plans and specifications for the proposed improvement, and to advertise two weeks for sealed bids therefor. If no satisfactory bid is obtained, the city may "by ordinance" determine to construct the improvement under its own supervision. By section 16 it is provided: "All improvements authorized by this Act shall be constructed under contract with the lowest responsible bidder, except as herein otherwise provided after the notice for sealed bids hereinbefore set forth."

The city's failure to comply with these requirements is urged by the defendants as invalidating the assessments.

The improvement district for Oakland street was created pursuant to a petition signed by the owners of more than 51 per centum of the property to be affected, in October, 1923, as required by section 2 of the Act of 1907 (as amended by Priv. Acts 1917, ch. 88). Some of the defendants to this suit were signers of that petition. Advertisement for bids was made on November 30, 1923, fixing December 21, 1923, as the date for the opening of bids and the letting of the contract. On that date, the

bid of the Municipal Paving Company was the only bid received, and a contract was awarded that company for unit prices which, according to the city engineer's estimate, aggregated about $19,000.

But notwithstanding the apparent regularity of the advertisement for sealed bids, and the award of the contract on December 21, the proof shows without contradiction that the Municipal Paving Company, which was paving other streets in Johnson City at the time, began the work of paving Oakland street in November, and by December 1 had done work estimated by the city engineer to be of the value of $8,000 more than one-third of the total. Of this sum $7,400 was paid early in December. The chancellor found that on January 1, nine days after the contract was awarded, the engineer estimated that the work completed amounted in value to $18,000, practically all.

From this it appears that the Municipal Paving Company had completed a substantial portion of the work when advertisement for bids was first made, and that the work was at least more than half completed when the date for awarding the contract arrived. The mayor and city engineer, in office when the work was done, testified without offering any explanation for the facts disclosed.

The chancellor gave it as his opinion that these facts amounted only to an irregularity and did not amount to a "total" failure to comply with the statutory requirement that the work be done on contract awarded after notice for competitive bidding. In our opinion, the failure to comply with the statute was worse than "total." Observing the forms prescribed, the city pursued a course which made it impossible for any other contractor to

make a *bona fide* bid to do the work. The purpose of making the advertisement could only have been to deceive; to make it appear on the record that the work was done after the contract had been awarded on the date fixed by the advertisement for bids, when in fact it was begun before that date, and necessarily under some undisclosed agreement as to what the contractor's bid should be. The chancellor surmised that the motive of the city officers was to avoid delay, because the street was in bad condition. But the record fails to disclose, and we think it immaterial, what the motive was. The only reasonable inference of fact is that, under the circumstances stated, the improvement was not only done by private contract, but a culpable effort was made to conceal the fact on the records of the city.

The chancellor and the Court of Appeals were of opinion that the defendants, by failing to object and by signing the petition for the creation of the district, estopped themselves from questioning the validity of the assessment. We are of the contrary opinion, and hold that no estoppel appears.

The signers of the petition invited the city to proceed in accord with the statute; not to willfully violate its provisions designed for the protection of the taxpayers of the city as well as the owners of the abutting property.

There is no evidence that the defendants or any of them had knowledge that advertisement had not been made and the contract had not been awarded when the work was being done. The date of the public hearing on the assessments, prescribed by sections 14 and 15 of the Act of 1907, and section 15, as amended by Priv. Acts 1917, ch. 88, was in February, 1924, long after the work

was completed. A protest then would have been wholly ineffectual.

The contract made by the city for the construction of the improvement, in violation of the express requirement of the statute that it be made after competitive bidding, was void and created in the city no obligation enforceable by law. *Kreis & Co.* v. *City of Knoxville,* 145 Tenn., 297, 237 S. W., 55; *Watterson* v. *Nashville,* 106 Tenn., 410 424, 61 S. W., 782, 785. In the case last cited, the court referred to such statutory requirements as "jurisdictional in character," and held that a contract made in violation of them "is void beyond the power of subsequent ratification."

The authorities are practically uniform in holding that disregard of statutory requirements, that the contract for a public work be awarded to the lowest bidder after advertisement for bids, will render unenforceable an assessment of the cost against private property. *Brady* v. *Bartlett,* 56 Cal., 350; *City of Tompkinsville* v. *Miller,* 195 Ky., 143, 241 S. W., 809; *City of Marysville* v. *Lippman,* 151 Mo. App., 447, 132 S. W., 47; *Helwig* v. *Gloversville* (Sup.), 158 N. Y. S., 475; *Kneeland* v. *Furlong,* 20 Wis., 437; *Wells* v. *Burnham,* 20 Wis., 112.

And it is generally held that such defect in the procedure preliminary to the levy of the assessment is jurisdictional in character, not waived by the property owner's failure to appear and object to the city's levy, nor within the ordinary rules of estoppel for failure to protest while the work is being performed. *Clay City* v. *Bryson,* 30 Ind. App., 490, 66 N. E., 498; *Ford* v. *Excelsior Springs Land Co.* (Mo. App.), 223 S. W., 960; *Flinn* v. *Gillen,* 320 Mo., 1047, 10 S. W. (2d), 923; *City of Sebree*

v. *Powell,* 221 Ky., 478, 298 S. W., 1103; *Gray* v. *W. A. Black Co.,* 338 Ill. 488, 170 N. E., 713; *Indiana Asphalt Paving Co.* v. *Grand Lodge* (Ind. App.), 170 N. E., 85.

In *South Fulton* v. *Parker* (Tenn. App. 1933), — S. W. (2d), —, the Court of Appeals ruled that when a municipality is given power to construct a public improvement and assess the cost against abutting property, only upon petition signed by a designated proportion of the property owners to be affected, the absence of the requisite petition is a jurisdictional defect, fatal to the city's right to enforce the assessment when offered in defense to a suit for that purpose. We assented to that ruling by denying *certiorari.* And see *City of Nashville* v. *Madison Park Land Co.,* 155 Tenn., 382, 293 S. W., 533.

A legislative mandate that public works be constructed under contract awarded to the lowest bidder, after advertisement for competitive bids, is designed for the protection of the tax paying public against its officers, who may be influenced by favoritism or other motives to subordinate the public interest to private ends. In the case before us that mandate was willfully violated, and we perceive no other way to secure its observance in the future than to follow the authorities cited in refusing to recognize an expense so incurred by the city as the basis of a special assessment against private property.

The decree of the Court of Appeals is accordingly reversed, and the suit dismissed, at the cost of the city of Johnson City.